UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
RACHEL JOHNSON,                    :
          Plaintiff,               :
                                   :
     v.                            :      CA 06-542 S
                                   :
MICHAEL J. ASTRUE[1],              :
COMMISSIONER,                      :
SOCIAL SECURITY ADMINISTRATION,    :
          Defendant.               :
```

### REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Rachel M. Johnson ("Plaintiff") has filed a motion to reverse or remand the decision of the Commissioner. See Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Doc. #9) ("Motion to Reverse or Remand"). Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner. See Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #11) ("Motion to Affirm").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the

---

[1] Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name ....").

Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record.  Accordingly, based on the following analysis, I recommend that Plaintiff's Motion to Reverse or Remand be denied and that Defendant's Motion to Affirm be granted.

### Facts and Travel

Plaintiff was born in 1966.  (Record ("R.") at 74, 855)  She completed high school and has a two year associate's degree.  (R. at 90, 855)  In the relevant past she worked as a stadium server, customer service representative, telemarketer, and assistant manager.  (R. at 85, 96)

Plaintiff filed an application for DIB on March 27, 2003, alleging disability since May 30, 2002, due to fibromyalgia, arthritis, cancer, shoulder, arm, and hip pain, knee weakness, depression, and anxiety.  (R. at 20, 74)  The application was denied initially, (R. at 39, 43-45), and on reconsideration, (R. at 40, 48-50).  On April 22, 2005, Administrative Law Judge ("ALJ") Barbara F. Gibbs conducted a hearing at which Plaintiff and a vocational expert appeared and testified.  (R. at 747-862)  On October 25, 2005, the ALJ issued a decision in which she found that Plaintiff was not disabled.  (R. at 19-32)  Plaintiff requested that the ALJ's decision be reviewed by the Appeals Council.  (R. at 14-15)  On October 16, 2006, the Appeals Council denied Plaintiff's request, stating that it found no reason under its rules to review the ALJ's decision.  (R. at 10)  This action rendered the ALJ's October 25, 2005, decision the final decision of the Commissioner.  (Id.)  Thereafter, Plaintiff filed this action for judicial review.

### Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of

the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

## Law

To qualify for DIB, a claimant must meet certain insured

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

status requirements,[3] be younger than sixty-five years of age,
file an application for benefits, and be under a disability as
defined by the Act.  See 42 U.S.C. § 423(a).  The Act defines
disability as the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months ...."  42 U.S.C. §
423(d)(1)(A).  A claimant's impairment must be of such severity
that she is unable to perform her previous work or any other kind
of substantial gainful employment which exists in the national
economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or
combination of impairments is not severe if it does not
significantly limit [a claimant's] physical or mental ability to
do basic work activities."[4]  20 C.F.R. § 404.1521(a) (2008).  A
claimant's complaints alone cannot provide a basis for
entitlement when they are not supported by medical evidence.  See
Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st
Cir. 1986); see also 20 C.F.R. § 404.1528(a) (2008).

---

[3] Plaintiff's last date insured was June 30, 2003.  (R. at 20,
31)  Thus, her insured status expired approximately 22 months prior to
the April 22, 2005, hearing before the ALJ.  (R. at 19, 747)

[4] Section 404.1521 describes "basic work activities" as "the
abilities and aptitudes necessary to do most jobs."  20 C.F.R. §
404.1521(b) (2008).  Examples of these include:

   (1) Physical functions such as walking, standing, sitting,
   lifting, pushing, pulling, reaching, carrying, or handling;
   (2) Capacities for seeing, hearing, and speaking;
   (3) Understanding, carrying out, and remembering simple instructions;
   (4) Use of judgment;
   (5) Responding appropriately to supervision, co-workers and
   usual work situations; and
   (6) Dealing with changes in a routine work setting.

Id.

4

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2008); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on May 30, 2002, (R. at 31); that the residual effects of surgery to remove a sarcoma from Plaintiff's left scapula and her fibromyalgia, bilateral knee chondromalacia, depression and anxiety disorder were severe but not severe enough to meet or equal any listed impairment, (id.); that the degree of incapacity alleged by Plaintiff was not supported by the record and not deemed to be credible, (R. at 28-29, 31); that Plaintiff had the residual functional capacity ("RFC") to perform unskilled, routine and repetitive, light-to-sedentary work in a stable environment that provided the opportunity to change

5

positions between sitting and standing at approximately thirty minute intervals throughout the work day and which did not require overhead work with the left upper extremity, kneeling, crawling, climbing, or squatting, (R. at 31); that this RFC precluded performance of Plaintiff's past relevant work, (id.); but that there existed a significant number of jobs in the national economy which she could perform, (R. at 32); and that, therefore, Plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, (id.).

**Errors Claimed**

Plaintiff alleges that: 1) the ALJ gave insufficient weight to the opinions of the treating and examining physicians, psychiatrist and psychologist and, therefore, the ALJ's RFC findings are not supported by substantial evidence; and 2) the ALJ failed to follow the proper standards for pain evaluation and credibility pursuant to Avery v. Secretary of Health & Human Services, 797 F.2d 19 (1st Cir. 1986) and Social Security Ruling ("SSR") 96-7p.

**Discussion**

**I.  The ALJ's evaluation of the opinions of Plaintiff's treating physicians**

**A. Pertinent Regulations and Law**

According to 20 C.F.R. § 404.1527(d):

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion of the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it

6

controlling weight.  When we do not give the treating
source's opinion controlling weight, we apply the factors
listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this
section, as well as the factors in paragraphs (d)(3)
through (d)(6) of this section in determining the weight
to give the opinion.[5]

20 C.F.R. § 404.1527(d)(2) (2008); <u>see also</u> SSR 96-2p, 1996 WL

374188, at * 2 (S.S.A.)("It is an error to give an opinion

---

[5] The factors to be considered when a treating source's medical opinion
is not given controlling weight are: (1) the length of the treatment
relationship and the frequency of examination; (2) the nature and
extent of the treatment relationship; (3) the supportability of the
opinion; (4) the consistency of the opinion with the record as a
whole; (5) the specialization of the source; and (6) other factors.
20 C.F.R. § 404.1527(d)(2)-(6) (2008).  The "other factors" include
"the amount of understanding of our disability programs and their
evidentiary requirements that an acceptable medical source has,
regardless of the source of that understanding, and the extent to
which an acceptable medical source is familiar with the other
information in your case record ...."  20 C.F.R. § 404.1527(d)(6).
    Section 404.1527(e) provides that:

    Opinions on some issues, such as the examples that follow, are
    not medical opinions ... but are, instead, opinions on issues
    reserved to the Commissioner because they are administrative
    findings that are dispositive of a case; *i.e.*, that would
    direct the determination or decision of disability.
        (1) *Opinions that you are disabled*.  We are responsible
        for making the determination or decision about whether
        you meet the statutory definition of disability.  In so
        doing, we review all of the medical findings and other
        evidence that support a medical source's statement that
        you are disabled.  A statement by a medical source that
        you are "disabled" or "unable to work" does not mean
        that we will determine that you are disabled.

20 C.F.R. § 404.1527(e); <u>see also</u> <u>Arroyo v. Sec'y of Health & Human</u>
<u>Servs.</u>, 932 F.2d 82, 89 (1st Cir. 1991) ("The ALJ was not required to
accept the conclusions of claimant's treating physicians on the
ultimate issue of disability."); SSR 96-5p, 1996 WL 374183, at *3
(S.S.A.)("[T]he adjudicator is precluded from giving any special
significance to the source; e.g., giving a treating source's opinion
controlling weight, when weighing these opinions on issues reserved to
the Commissioner.").  However, such opinions are not to be
disregarded.  <u>See</u> <u>id.</u> ("[O]pinions from any medical source on issues
reserved to the Commissioner must never be ignored.").  They must be
evaluated using the applicable factors in 20 C.F.R. § 404.1527(d).
<u>See</u> <u>id.</u>

7

controlling weight ... if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."). When a treating source's opinion is not given controlling weight and the determination or decision is not fully favorable, "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *5; see also 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"It is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]." Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988); cf. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians."); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)(noting that the First Circuit "ha[s] repeatedly refused to adopt any per se rule to that effect"). Although the First Circuit "held in Browne v. Richardson, 468 F.2d 1003 (1st Cir. 1972), that, on the facts of that case, a written report submitted by a non-testifying, non-examining physician who merely reviewed the written medical evidence could not alone constitute substantial evidence to support the [Commissioner's] conclusion," Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991), it is clear from later decisions that this is not an absolute rule, see Gordils v. Sec'y of Health & Human

Servs., 921 F.2d 327, 328 (1st Cir. 1990)(citing Tremblay, 676
F.2d at 13); see also Berrios Lopez, 951 F.2d at 431 (same).
"Such an advisory report is entitled to some evidentiary weight,
which "will vary with the circumstances, including the nature of
the illness and the information provided the expert."  Gordils,
921 F.2d at 328 (quoting Rodriguez v. Sec'y of Health & Human
Servs., 647 F.2d 218, 223 (1st Cir. 1981)); see also Berrios
Lopez, 951 F.3d at 431 (same); Guzman Diaz v. Sec'y of Health &
Human Servs., 613 F.2d 1194, 1199 n.7 (1st Cir. 1980)(same);
Thompson v. Barnhart, Civil Action No. 05-11051-DPW, 2006 WL
2506035, at *3 (D. Mass. Aug. 28, 2006)("The First Circuit
considers the following factors in determining whether a non-
examining physician's opinion is entitled to evidentiary weight:
whether the doctor's report contains substantial subsidiary
findings; whether the majority of the evidence was available to
the non-examining physician; whether the medical evidence was
reviewed with care[;] and whether there was broad agreement
reflected in the advisory opinions.")(citing DiVirgilio v. Apfel,
21 F.Supp.2d 76, 81 (D. Mass. 1998)); cf. Rose v. Shalala, 34
F.3d 13, 18-19 (1st Cir. 1994)(stating, in case involving chronic
fatigue syndrome ("CFS"), that "[t]he deciding factor in this
case is 'the nature of the illness'" and holding that the non-
examining agency physicians' reports, without more, could not
constitute substantial evidence in support of the ALJ's
finding)(quoting Berrios Lopez, 951 F.2d at 431).

    **B.  Dr. Ali**

    Plaintiff argues that the ALJ "had insufficient reasons for
giving reduced weight to the opinions of Dr. [Yousaf] Ali."  See
Plaintiff's Memorandum in Support of Her Motion to Reverse or
Remand the Decision of the Commissioner ("Plaintiff's Mem.") at
12.  Plaintiff does not identify the "opinions," id., of Dr. Ali
to which she is referring, see id., but presumably she has in
mind the Physical Capacities Evaluation form which he completed

on July 11, 2003, (R. at 273).  Plaintiff includes this
evaluation in her recitation of treating source opinions.  <u>See</u>
Plaintiff's Mem. at 10.

To the extent that Plaintiff contends that the ALJ should
have given controlling weight to Dr. Ali's opinion, such
contention is rejected.  Dr. Ali's opinion clearly was not
entitled to controlling weight.  As Plaintiff herself
acknowledges, Dr. Ali "found no objective findings," <u>id.</u> at 7
(citing (R. at 277)).  Therefore, his opinion was not well-
supported by medically acceptable clinical and laboratory
diagnostic techniques.  20 C.F.R. § 404.1527(d)(2).  In addition,
Dr. Ali's opinion was not consistent with the other substantial
evidence in the record, <u>see</u> <u>id.</u>, some of which the ALJ identified
in her decision, (R. at 27).  In particular, the ALJ noted that
the degree of limitation which Dr. Ali expressed on the Physical
Capacities Evaluation form[6] was inconsistent with his
recommendations that Plaintiff participate in physical therapy
and aerobic exercise, (<u>id.</u>).  The ALJ's point is supported by the
record.  On September 25, 2002, Dr. Ali recommended that
Plaintiff participate in a "regular aerobic exercise program,
including swimming ...."  (R. at 268)  In his last report (dated

---

[6] Dr. Ali indicated that Plaintiff could not perform a wide range of
activities.  On the evaluation form, he checked off that Plaintiff
could "NEVER" lift or carry up to five pounds, that she could not use
her hands for repetitive pushing and pulling of arm controls, and that
she could not reach.  (R. at 273)  Yet, at the hearing, Plaintiff
after testifying "moved to a chair [at] the rear of the courtroom and
proceeded to perform two sets of upper body and upper extremity
stretches that required not only reaching overhead but also
considerable flexibility and range of motion in the shoulders, elbows
and upper back."  (R. at 28 n.8)  Apparently giving Plaintiff the
benefit of the doubt, the ALJ "assumed ... that she has gained
flexibility over time and that prior to the date last insured, she was
more limited tha[n] these stretches would indicate."  (<u>Id.</u>)  Thus, the
ALJ included in her RFC determination that "[t]he job should not have
required overhead work with the left upper extremity, kneeling,
crawling, climbing or squatting."  (R. at 29)

April 2, 2003) prior to completing the evaluation form, Dr. Ali again referenced physical therapy and aerobic exercise as part of a treatment program for fibromyalgia, and he gave no indication that Plaintiff was incapable of participating in these activities.  (R. at 270-71)  These recommendations are at odds with the limitations which Dr. Ali indicated on the physical capacity evaluation form completed on July 11, 2003.  (R. at 273)  Accordingly, the ALJ did not err by failing to give controlling weight to Dr. Ali's opinion.

To the extent that Plaintiff contends that the ALJ should have given greater (but not controlling) weight to Dr. Ali's opinion, the Court is similarly unpersuaded that the ALJ erred. The ALJ gave valid reasons for why she ascribed "some, but not controlling weight," (R. at 27), to Dr. Ali's opinion.  In addition to those noted above, the ALJ properly considered that Dr. Ali had only seen Plaintiff three times at approximately three month intervals (September 25, 2002, January 21, 2003, and April 2, 2003) prior to completing the evaluation.  (R. at 267, 269, 270)  The ALJ also cited Dr. Ali's report of "considerable improvement in the claimant's shoulder complaints after receiving trochanteric bursal injections and Ambien for sleep," (R. at 27), and this observation is supported by the record, (R. at 269).[7] The ALJ further observed that the limitations Dr. Ali found were "of necessity based on the claimant's subjective allegations as the doctor's examinations of the claimant were, with the

_____

[7]  Dr. Ali's January 21, 2003, report states in part: "I am seeing the patient in follow up.  She is doing much better since she is following the local trochanteric bursal injections."  (R. at 269)  Plaintiff suggests that the improvement was limited to her shoulder pain and that her other pain and fibromyalgia were unaffected.  See Plaintiff's Mem. at 13.  However, the ALJ's interpretation of this entry was reasonable as the overall impression conveyed by the entire entry is that Plaintiff's condition has improved.  (R. at 269)  Accordingly, to the extent Plaintiff contends that the ALJ's citation of this entry is evidence of faulty reasoning, see Plaintiff's Mem. at 13, such contention is rejected.

exception of the presence of tender points, relatively benign."
(R. at 27)  Given that Dr. Ali had no objective findings to
support the limitations which he indicated on the form, this
observation was valid.

Plaintiff appears to contend that the usual rules for
evaluating physicians' opinions and medical evidence are
inapplicable in cases involving fibromyalgia.  See Plaintiff's
Mem. at 13; Plaintiff's Reply Brief ("Plaintiff's Reply") at 2
("It follows that the lack of objective findings is not a basis
for discrediting Dr. Ali's opinion.").  However, the ALJ did not
give reduced weight to Dr. Ali's opinion solely because of a lack
of objective findings.  This was only one of several reasons
cited by the ALJ.  In the absence of an explicit directive from
the First Circuit that it is error for an ALJ to even mention the
lack of objective findings in cases involving fibromyalgia, this
Court declines to so find.  Cf. Desrosiers v. Hartford Life &
Accident Ins. Co., 515 F.3d 87, 93 (1st Cir. 2008)(noting in
ERISA case that while it is "impermissible to require objective
evidence to support claims based on medical conditions that do
not lend themselves to objective verification, such as
fibromyalgia ... we also made clear that it is permissible to
require objective support that a claimant is unable to work as a
result of such conditions").

### C.  Dr. Slattery

In addition, Plaintiff faults the ALJ for allegedly failing
to consider Dr. John Slattery's opinion.  See Plaintiff's Mem. at
14.  Yet, the record reflects that the ALJ repeatedly mentioned
Dr. Slattery in her decision.  She identified him as Plaintiff's
primary care provider from January 1998 to April 2003 and devoted
an entire paragraph to his treatment of Plaintiff.  (R. at 22)
Thereafter, the ALJ referred to Dr. Slattery and his treatment of
Plaintiff in at least four more paragraphs.  (R. at 22, 24, 26)

12

The suggestion that the ALJ overlooked Dr. Slattery's evidence is untenable.

Plaintiff partially quotes the ALJ's statement that those physicians "who were best acquainted with [Plaintiff] and her symptoms did not render opinions that she was disabled," (R. at 29), and asserts that this observation indicates that the ALJ was "unaware of Dr. Slattery's opinion evidence," Plaintiff's Mem. at 14.  Plaintiff acknowledges that Dr. Slattery's opinion was given after Plaintiff's date last insured, but contends that "Judge Gibbs did not reject his opinion on that basis, or at least she didn't articulate that reason." Id.  As to this point, it is Plaintiff who is ignoring evidence.  The ALJ's entire statement was: "Although [Plaintiff] consulted numerous physicians in the time **prior to the date last insured**, those who were best acquainted with her and her symptoms did not render opinions that she was disabled."  (R. at 29)(bold added).  Thus, the ALJ specifically qualified her statement so as to apply to the time period prior to the date last insured.  Dr. Slattery's Physical Capacities Evaluation, which indicates that Plaintiff could only sit, stand, and walk for one hour during an entire eight hour day, is dated March 17, 2005, (R. at 643), almost twenty-one months after Plaintiff's date last insured.

Plaintiff is critical of the ALJ for allegedly not sufficiently articulating her assessment of the evidence to enable this Court to assure itself that the ALJ considered the important evidence and to allow the Court to trace the path of the ALJ's reasoning.  See Plaintiff's Mem. at 14.  The Court finds this argument to be without merit.  The ALJ's decision is extremely detailed, and it contains a thorough discussion of the evidence.  The ALJ's obvious effort is reflected in the decision's length (almost fourteen single-spaced pages).  In addition, the ALJ also allowed for an unusually long and extended hearing, resulting in a transcript of 114 pages.  (R. at 749-862)

The contention that the ALJ's performance in this case was
substandard is belied by the record.  (R. at 19-32, 749-862)

### D.  **Dr. Dizio**

Plaintiff argues that the ALJ erred in not accepting the
opinion of Dr. Stephen Dizio, a psychiatrist who examined
Plaintiff almost two months after her date last insured.  See
Plaintiff's Mem. at 14-15.  The ALJ recognized that Dr. Dizio
opined that Plaintiff's "then-current level of depression and
anxiety would interfere to a moderately severe degree with the
claimant's ability to carry out instructions and respond
appropriately to customary work pressures."  (R. at 27)
However, the ALJ found that this opinion was not consistent with
Dr. Dizio's own observations, Plaintiff's statement, or the views
of her treating physicians.  (Id.)  Plaintiff contends that there
is nothing inconsistent with Dr. Dizio's opinion in the West Bay
psychiatric records which the ALJ cited as an example of such
inconsistency.  See Plaintiff's Mem. at 15.  However, the
medication notes from West Bay which immediately precede the
expiration of Plaintiff's insured status on June 30, 2003,
reflect that Plaintiff reported improvement in her mental state.
(R. at 283-84)  Such improvement casts at least some doubt on
whether Plaintiff was as impaired prior to her date last insured
as she was in August of 2003 when Dr. Dizio performed his
evaluation.

In addition, support for this finding exists in the record
at least as to Dr. Dizio's observations and Plaintiff's
statements.  Dr. Dizio wrote that Plaintiff "did not report
subjective difficulties in [concentration]."  (R. at 240)
Plaintiff indicated on her Activities of Daily Living form,
completed on May 27, 2003, that she had problems with her memory
and concentration, but explained that this occurred only
occasionally and that the problems were "not to bad — probably
from med[.]"  (R. at 110)  She also told Dr. Dizio she was able

14

to drive, but did not "drive long distances because of her pain."
(R. at 240)  She gave no indication that her mental impairments
hindered her ability to operate a motor vehicle.

As for the ALJ's statement that Dr. Dizio's opinion was not
consistent with the views of her treating physicians, the ALJ did
not indicate to which of the several treating physicians whose
reports are in the record he was referring.  However, the ALJ
subsequently noted in her decision that when Plaintiff was
evaluated by William P. Kyros, M.D., a psychiatrist, on April 9,
2004, her GAF[8] was 65[9] which indicates only mild symptoms.  (R.
at 507)  While the ALJ recognized that Dr. Kyros' opinion was
subsequent to the expiration of Plaintiff's date last insured,
she found that it was "not inconsistent with the evidence before
that date or with the residual functional capacity established
herein."  (R. at 27)  The Court agrees.

**E.  Patricia Raposa**

Plaintiff faults the ALJ for failing to mention that Dr.
Dizio's opinion "was consistent with that of the treating
psychologist, Dr. Raposa."  Plaintiff's Mem. at 15.  As an
initial matter, it appears that Patricia Raposa is not a doctor,
but, as noted by Defendant, an advanced practice registered
nurse.  See Defendant's Memorandum of Law in Support of Motion
for an Order Affirming the Decision of the Commissioner
("Defendant's Mem.") at 15 n.4.  Plaintiff in her reply brief
appears to concede that Raposa is not an acceptable medical
source.  See Plaintiff's Reply at 3 (referring to Raposa as a

---

[8] "GAF" refers to the Global Assessment of Functioning scale, which
considers psychological, social, and occupational functioning on a
hypothetical continuum of mental health disorders.  See Diagnostic &
Statistical Manual of Mental Disorders-Text Revision (4th ed.) ("DSM-
IV-TR") at 34.
[9] A GAF of 55 indicates "**Moderate symptoms** (e.g., flat affect and
circumstantial speech, occasional panic attacks) **OR moderate
difficulty in social, occupational, or school functioning** (e.g., few
friends, conflicts with peers or co-workers)."  DSM-IV-TR at 34.

15

"nurse practitioner"); <u>see also</u> 20 C.F.R. § 404.1513(a) (listing acceptable medical sources, as inter alia, physicians and psychologists); <u>id.</u> § 404.1513(d)(1) (listing "other sources" including nurse practitioners); SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A.)(identifying nurse practitioners as medical sources who are not "acceptable medical sources").  However, Plaintiff argues that in certain circumstances an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source."  Plaintiff's Reply at 3-4; <u>see also</u> SSR 06-03p at 5 ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.").  Plaintiff complains that the ALJ "ignored," Plaintiff's Reply at 4, Nurse Raposa's opinion.

The Court sees no error in the ALJ's decision not to mention an opinion from a nurse practitioner which is dated March 23, 2005, (R. at 648-49), almost 21 months after the expiration of Plaintiff's date last insured, <u>cf.</u> <u>Lord v. Apfel</u>, 114 F.Supp.2d 3, 13 (D.N.H. 2000)("[T]he First Circuit has held that an ALJ's written decision need not directly address every piece of evidence in the administrative record.")(citing <u>Shaw v. Sec'y of Health & Human Servs.</u>, 25 F.3d 1037, 1990 WL 251000, at *5 (1st Cir. Sept. 11, 1990)(per curiam)(table decision)).  In a case where the record exceeds 800 pages, the ALJ understandably had to exercise some judgment regarding what evidence she would mention in her decision.  As already noted, that decision was unusually long and detailed, and, if anything, the ALJ deserves to be commended for its thoroughness.

Moreover, the ALJ's finding that Plaintiff had no more than moderate limitations with respect to concentration, persistence, and pace is supported by the assessment of two state agency

16

reviewing experts.  (R. at 257-59, 321-23)  These opinions were
rendered in September and December 2003, (R. at 259, 323), and
there is no reason to believe that the reviewing experts did not
have the records covering the period up to June 30, 2003, the
last date Plaintiff was insured.  The ALJ concluded that these
"opinions appear to be reasonable, given the dearth of evidence
as to mental impairments and treatment before the date last
insured."  (R. at 28)  Having reviewed the record, this Court
agrees.

### F.  Summary Re Treating Physicians' Opinions

Accordingly, the Court rejects Plaintiff's argument that the
ALJ should have accorded controlling (or greater) weight to
Plaintiff's treating physicians regarding her physical
impairments and the severity of her depression and anxiety.  The
Court finds that the ALJ's determination that Plaintiff was not
limited by her physical and mental impairments beyond the degree
provided for in the RFC found by the ALJ, (R. at 29), is
supported by substantial evidence in the record.

## II.  The ALJ's evaluation of Plaintiff's subjective complaints and credibility

The ALJ concluded that "the degree of limitations asserted
by the claimant is found to be inconsistent with the medical
evidence of record prior to the lapse of her insured status."
(R. at 28-29)  Plaintiff argues that the ALJ's rejection of
Plaintiff's testimony about her limitations as inconsistent with
the record was legal error and unsupported by substantial
evidence and that the ALJ failed to follow the Avery factors.
See Plaintiff's Mem. at 15-16.  The Court finds persuasive the
ALJ's reasons for finding Plaintiff less than credible.

An ALJ is required to investigate "all avenues presented
that relate to subjective complaints ...."  Avery v. Sec'y of
Health & Human Servs., 797 F.2d 19, 28 (1st Cir. 1986).  When

17

assessing the credibility of an individual's statements, the ALJ must consider, in addition to the objective medical evidence, the following factors:

1.   The individual's daily activities;
2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.   Factors that precipitate and aggravate the symptoms;
4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (S.S.A.); see also Avery, 797 F.2d at 29 (listing factors relevant to symptoms, such as pain, to be considered); 20 C.F.R. § 404.1529(c)(3) (2008) (same).

In addition, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." Id. at *4. The ALJ's credibility finding is generally entitled to deference. Frustaglia v. Sec'y of Health &

18

Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)(citing DaRosa v.
Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986));
see also Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he
ALJ, like any fact-finder who hears the witnesses, gets a lot of
deference on credibility judgments."); Suarez v. Sec'y of Health
& Human Servs., 740 F.2d 1 (1st Cir. 1984)(stating that ALJ is
"empowered to make credibility determinations ...").

     Here the ALJ thoroughly explored the Avery factors.  At the
hearing, the ALJ asked Plaintiff what medications she was taking
before June 2003.  (R. at 779-81)  She asked whether Plaintiff
experienced side effects, (R. at 781-82), and whether Plaintiff
was able to take care of her personal grooming and hygiene
without help from other people, (R. at 783-84).  The ALJ asked
what time Plaintiff went to bed and woke up in the morning, (R.
at 788-89), what Plaintiff did during the day, (R. at 790), and
whether Plaintiff rested during the day, (R. at 790-92).
Plaintiff was asked whether she could cook, clean, and shop; how
often she left the house; how she passed her time; whether she
had visitors; and whether she had any hobbies or interests.  (R.
at 793-800)  The ALJ then asked why Plaintiff did not participate
in physical therapy, (R. at 802), whether she took Vicodin, (R.
at 811), and what her average pain level was on a daily basis,
(R. at 825).  Finally, Plaintiff was questioned about her pain by
both the ALJ and Plaintiff's attorney.  (R. at 827, 831, 834)

     The ALJ addressed the Avery factors in her decision.  She
repeatedly noted Plaintiff's complaints of pain.  (R. at 22-25,
28)  The ALJ also noted that Plaintiff's husband assisted her
with daily personal care needs involving overhead activities;
that she cooked, cleaned, did laundry, drove her children to
school daily, and shopped for groceries (accompanied by her
daughter or husband for pushing or carrying); that friends came
over for coffee; that she attended church weekly and went out to
dinner occasionally with family or friends; and that she

exercised by walking in the house, watched television, and read.
(R. at 28)

SSR 96-7p directs the ALJ to consider the consistency of
Plaintiff's statements with other information in the record.  SSR
96-7p, 1996 WL 374186, at *5 ("One strong indication of the
credibility of an individual's statements is their consistency,
both internally and with other information in the case record.").
"The credibility determination by the ALJ, who observed the
claimant, evaluated h[er] demeanor, and considered how that
testimony fit in with the rest of the evidence, is entitled to
deference, especially when supported by specific findings."
Frustaglia, 829 F.2d at 195.

The ALJ gave multiple reasons for finding Plaintiff's
allegations not totally credible.  (R. at 28-29)  She noted that
from time to time Plaintiff had been non-compliant with
treatment, such as cortisone injections in the knee(s), and
physical therapy, (R. at 29); that Plaintiff had taken herself
off pain medication without informing her doctors in order to
obtain replacement medication, (id.); and that prior to her date
last insured Plaintiff had made few complaints of significant
mental impairment, (id.).  The ALJ observed that although
Plaintiff testified that she was unable to concentrate and that
her memory had declined, she was able to testify to medications,
events, and treatment more than two years in the past.  (Id.)
The ALJ additionally noted that while at the hearing Plaintiff
"testified that she prepared only the main dishes for meals, in
May 2003, she indicated that she performed all meal preparation
except for lifting heavy items, such as roasts."  (R. at 28); see
also (R. at 108).

It is clear that the ALJ complied with the requirement that
she "make specific findings as to the relevant evidence [s]he
considered in determining to disbelieve [Plaintiff]."  DaRosa v.
Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986);

see also Bazile v. Apfel, 113 F.Supp.2d 181, 187 (D. Mass. 2000) (citing DaRosa); SSR 96-7p, 1996 WL 374186, at *4 ("The determination or decision must contain specific reasons for the finding on credibility ....").

Plaintiff again suggests that fibromyalgia cases are to be treated differently than other cases when evaluating pain and credibility. See Plaintiff's Mem. at 17; Plaintiff's Reply at 2 (citing, inter alia, Rodriquez v. Barnhart, 94 Soc. Sec. Rep. Serv. 629, 2004 WL 502216 (D. Del. Mar. 10, 2004).  To the extent Plaintiff contends that the usual considerations in determining credibility are inapplicable in cases involving fibromyalgia, the Court is unpersuaded that is so, and, in the absence of an explicit directive to this effect from the First Circuit, declines to so hold.  Furthermore, in Rodriquez, the court stated that "[i]n evaluating the claimant's complaints of pain in the context of a diagnosis of fibromyalgia, the A.L.J. may also consider such factors as (1) whether the record contains a detailed clinical documentation of the claimant's symptoms, and (2) whether the physicians who diagnosed the claimant with fibromyalgia reported on the severity of his or her condition." Rodriquez v. Barnhart, 2004 WL 502216, at *7.  As Defendant observes, "[t]his case makes no suggestion that the evaluation of physician's opinions is to be treated differently because of a diagnosis of [fibromyalgia]."  See Defendant's Mem. at 19; see also Rodriquez, 2004 WL 502216, at *7 ("[C]ourts have ... recognized that a diagnosis of fibromyalgia does not necessarily equate with a finding of disability under the Act.").  The Court agrees.

The Court concludes that the ALJ properly evaluated Plaintiff's credibility and that her determination that Plaintiff's allegations regarding her limitations were not totally credible is supported by substantial evidence in the

record.  Accordingly, the Court rejects Plaintiff's second claim
of error.

## Summary

Much of the evidence in the record post dates Plaintiff's
date last insured of June 30, 2003.  The ALJ wrote a decision
which is unusual for its length and detail.  Her determination to
afford less than controlling weight to the opinions of
Plaintiff's treating physicians is supported by substantial
evidence and does not constitute legal error.  To the extent
Plaintiff contends that the ALJ erred by not giving these
opinions greater than "some" weight, this contention is rejected.
The ALJ followed the proper standards for pain evaluation
pursuant to <u>Avery</u>, and her credibility determination is supported
by substantial evidence in the record.

## Conclusion

The Court finds that the Commissioner's decision that
Plaintiff is not disabled is supported by substantial evidence in
the record and is free of legal error.  Accordingly, I recommend
that Defendant's Motion to Affirm be granted and that Plaintiff's
Motion to Reverse or Remand be denied.

Any objections to this Report and Recommendation must be
specific and must be filed with the Clerk of Court within ten
(10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv
72(d).  Failure to file specific objections in a timely manner
constitutes waiver of the right to review by the district court
and of the right to appeal the district court's decision.  <u>See</u>
<u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986);
<u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st
Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
August 29, 2008

22